THE STATE ex inf. DAVID E. KILLAM, Prosecuting Attorney of Lincoln County, ex rel. T. J. HIGGINBOTHAM et al., Appellants, v. W. Y. COLBERT et al.

Division Two, February 16, 1918.

1. **JURISDICTION: County Court.** A county court, when acting in a judicial capacity, acquires jurisdiction only by compliance with the statute which gives it authority to act; and all the facts necessary to confer jurisdiction and make valid its order or judgment must affirmatively appear upon the face of the record.

2. ————: ————: **Organization of Road District: Change of Boundaries: No Amended Petition.** An order of a county court organizing a special road district with different boundaries from those set forth in the petition and notice, so as to exclude a large tract of land, made without an amended petition and without a remonstrance or hearing, is invalid, since the statute (Sec. 10612, Laws 1913, p. 678) requires the district to be incorporated "with the boundaries given in the petition or with such boundaries as may be set forth in an amended petition signed by the owners of a majority of the acres of land affected thereby."

3. ————: ————: ————: **Recital That Jurisdiction Had Been Acquired.** A recital in the order of the county court organizing a special road district that "the court has duly acquired and has jurisdiction of the subject-matter of this cause and of all the persons interested therein and of all the lands located within the boundary of said district" is not conclusive, but is a mere conclusion from the facts before the court. The acquirement of jurisdiction is not sufficient, but all the acts of the court must be within the limits of the jurisdiction so acquired. The court acquires jurisdiction of the subject-matter and of the parties by the filing of a proper petition and the statutory notice; but it exceeds its jurisdiction when, without an amended petition and without notice, it excludes a large tract of land described in the petition and notice and organizes a district with different boundaries.

4. ————: **Quo Warranto: Direct Attack.** A *quo warranto* proceeding is a direct attack upon, and the appropriate proceeding by which to attack, the validity of the order of a county court incorporating a special road district.

State ex inf. v. Colbert.

5. ———: Road District: Legislative and Judicial Functions. The Legislature has authority to establish and incorporate a special road district for purposes of special improvement and taxation, and to determine, without notice or hearing, what land would be benefited and is to be included in it; but that purely legislative function cannot be delegated or conferred upon a legislative agency. The Legislature can confer upon certain officers, boards, commissions and courts power to carry out in detail the legislative will, to prescribe rules and regulations, to ascertain facts upon which the operation of its statutory will will depend, or to carry through certain prescribed procedure by which to put in force certain statutes in limited districts. Certain of these powers thus conferred upon the agency are administrative and others are judicial, and where the power is judicial it cannot be exercised without notice and an opportunity to be heard. The act of incorporating a district is judicial, as is the determination of the question of whether the lands to be included will be benefited by the contemplated improvement, and even though the statute says that a district may be organized "of any dimensions that may be deemed advisable" lands cannot be included therein without a judicial inquiry as to benefits.

6. ———: ———: ———: Boundaries: Departure From Statutory Prescriptions. The authority of the county court to make any change in the proposed boundaries of a special road district that "the public good may require" and authority to organize a district "of any dimensions that may be deemed advisable" do not imply authority to depart from the description in the petition without an amendment or notice. A change of boundaries from those set out in the petition cannot be made without an opportunity to those affected to be heard. The county court cannot incorporate a district without making inquiry as to whether the lands included in a district will be benefited by the contemplated improvements. The statute requires a notice to the landowner before the district is incorporated, and the incorporation of a district of different boundaries from the one of which the landowners had notice is illegal.

7. ———: ———: Benefits. The statutes authorizing the incorporation of a special road district by county courts manifest a legislative intention that the court must determine after notice and an opportunity to landowners to be heard, whether or not lands located within its proposed boundaries will be benefited by the contemplated improvement. In a determination of that question, the court acts judicially, as it does in inquiring into the propriety of any change from boundaries described in the original petition, and in either case the determination must be had before the district is incorporated and the record must affirmatively show jurisdiction according to the statute to do what is done.

8. ———: ———: Irregularity: Changing Boundary of Road District. An order of the county court organizing a road district with boundaries different from those described in the petition, without notice and an amended petition, whereby a large tract of land was excluded, cannot be separated into valid and invalid parts, but is void as a whole, since all the land in the district is affected by the variance. The exclusion is not a mere irregularity, but involves the court's jurisdiction, since it is not done according to the method prescribed by the statute.

9. ———: ———: ———: ———: Judicial Act: Mandamus. The county court in changing the boundary of a road district as described in the petition and notice, without an amended petition and notice, did not act ministerially, but judicially, and hence the law will not presume that the order conformed to the petition, and mandamus is not available to compel the court to enter a judgment in conformity to that presumption.

10. ROAD DISTRICT: Conflicting Statutes. The general power granted to the county court by Section 10611, Laws 1913, p. 678, to organize a district "of any dimensions that may be necessary or advisable" within certain limits, must be construed in connection with Section 10612, which prescribes the method by which that general power is to be carried into effect, and the procedure by which the court may acquire and exercise jurisdiction to make orders affecting specific property. They are not inconsistent.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

REVERSED AND REMANDED (*with directions*).

*David E. Killam, Rufus L. Higginbotham, Sutton & Huston* and *Hostetter & Haley* for appellants.

(1) The court erred in ruling that the statute permitted the county court to change the boundaries of the road district as set forth in the original petition, as in its discretion it might determine to be necessary for the public good, without the filing of any remonstrance or an amended petition; such ruling is opposed to both the express language and spirit of the statute. Sec. 10612, R. S. 1909; Laws 1913, p. 678; Embree v. Road District, 240 U. S. 242, 257 Mo. 593. (2) No remonstrances having been filed, it was a jurisdictional prerequisite to the right of the county court to change the

boundaries of the road district as set forth in the original petition filed, that an amended petition should have been filed signed by the requisite landowners within the district, describing the boundaries as so changed. State ex rel. v. Wiethaupt, 165 Mo. App. 644; State ex rel. v. Wiethaupt, 266 Mo. 313; Bayless v. Gibbs, 251 Mo. 506; State ex rel. v. Heege, 37 Mo. App. 348; State ex rel. v. Seibert, 97 Mo. App. 218; Seafield v. Bohne, 169 Mo. 547; Stutz v. Cameron, 254 Mo. 359; State ex inf. v. Bellflower, 129 Mo. App. 146; 7 Ruling Case Law, sec. 57, p. 1029; Charles v. White, 214 Mo. 206; State ex rel. v. Forest, 177 Mo. App. 252; Davidson v. Schmidt, 256 Mo. 19; State ex rel. v. Campbell, 120 Mo. 402; State ex rel. v. Small, 131 Mo. App. 476; State ex rel. v. McReynolds, 61 Mo. 203.

*John L. Burns* and *Dudley & Williams* for respondents.

(1) The county court had authority to pass upon its own jurisdiction and the presumption of right action should be indulged as to its action on subjects committed to it by statute. Lingo v. Buford, 112 Mo. 149; Belk v. Hamilton, 130 Mo. 292; In Re Breck, 252 Mo. 327; Connors v. City of St. Joseph, 237 Mo. 612; State ex rel. v. Wilson, 216 Mo. 215, 274; State ex rel. v. Mining Co., 262 Mo. 502; Johnson v. Beazley, 65 Mo. 250; Murphy v. De France, 101 Mo. 151. (2) On the foregoing premises, the respondents take the position: 1st. The county court had jurisdiction of the subject-matter of incorporating this road district. Const. Mo., art. 6, sec. 36; Laws 1913, p. 678, secs. 10611, 10612; Hope v. Blair, 105 Mo. 85; Schuback v. McDonald, 179 Mo. 163; Ellis v. Elkins, 130 Mo. 90. 2nd. The county court acquired jurisdiction over the persons and lands in the district by the filing of the petition and publication of the notice shown in the record in this case. Laws 1913, p. 678, sec. 10612; Zeibold v. Foster, 118 Mo. 354; Bennett v. Hall, 184 Mo. 415; Embree v. Road

District, 257 Mo. 593, 240 U. S. 242. 3rd. A proper construction of the statute, Laws 1913, p. 678, sec. 10612, imposed upon the county court the duty of protecting the public interests and hence it had power to fix the boundaries with reference to the "public good" independently of the conduct of the non-consenting land owners. Mo. Constitution, art. 6, secs. 1, 36; R. S. 1909, secs. 10463, 10464; Laws 1913, p. 678, secs. 10611, 10612. 4th. The court acted judicially in passing upon the question of its own jurisdiction and incorporating the district and its judgment is not subject to either collateral or direct attack, except for fraud or mistake in the concoction of the judgment itself. State ex rel. v. Flemming, 158 Mo. 558; State ex rel. v. Mining Co., 262 Mo. 504; State ex rel. v. Woods, 223 Mo. 380; State ex rel. v. Haupt, 181 Mo. App. 18; State ex rel. v. Werthaupt, 150 Mo. App. 60; State ex rel. v. Buermean, 186 Mo. App. 701-2; Kansas City v. Winner, 58 Mo. App. 299; Gray v. Bowles, 74 Mo. 419; Embree v. Road District, 240 U. S. 242; 23 Cyc. 1219, par. 14 A, 2, b; Robbins v. Boulware, 190 Mo. 33; Murphy v. De France, 101 Mo. 151. 5th. The statute, Laws 1913, p. 678, sec. 10612, imposes upon the county court the duty of fixing the boundaries with reference to the "public good;" the only limit being that it must not incorporate land not included in the notice without consent of the owners. Hence its action fixing the boundaries is judicial so that an error or mistake is not a matter affecting the jurisdiction of the court. 7 R. C. L. 1045, sec. 79, note 1; Freeman on Judgments (3 Ed.), sec. 135; Friene v. Kirchoff, 176 Mo. 525-531; Hagerman v. Sutton, 91 Mo. 531; Howland v. Railroad, 134 Mo. 479; Hamer v. Cash, 118 Mo. 476; Leonard v. Sparks, 117 Mo. 103.

WHITE, C.—This proceeding was begun by an information in the nature of a *quo warranto* filed in the circuit court of Lincoln County by the prosecuting attorney of that county, at the relation of twenty-five

persons whose names are given, challenging the right of the respondents to exercise the functions of commissioners of a special road district. The respondents filed their return, alleging that they had been duly elected, had qualified and were acting commissioners of the "Silex & Louisville Road District of Lincoln County," setting out in detail the facts which, as they claimed, showed the organization of such district and their authority to serve as such commissioners.

On the trial of the cause the records of the county court of Lincoln County, relating to the attempted formation of the Silex & Louisville Road District, under Sections 10611 to 10625c, Laws 1913, pages 677 tó 695, together with the petition and notice in said matter, were offered in evidence.

The petition in the proceeding set out the boundaries of the proposed road district, stating that it included in the aggregate 11360 acres; set out a description of the several tracts of land included in it, with the name of the owner and the number of acres of each tract, and was signed in proper form by thirty-five or forty of such owners. The statutory notice, dated on the day the petition was filed, signed by the clerk of the county court, setting forth the same boundaries as stated in the petition with the same number of acres, 11360, was directed to the several parties named as landowners in the petition. Proof of the proper service of notice also was made.

The order of the county court incorporating the district was made May 17, 1915, being the first term following the filing of the petition and the publication of the notice. It recites, among other things, that the court finds the petition and notice were in due form and the notice duly served, "and that the court has duly acquired and has jurisdiction of the subject-matter of this cause and of all the persons interested therein, and of all the lands located within the boundary of said district." The order then recites:

"The court further finds from the evidences adduced that the public good requires and makes necessary that the boundaries of the said proposed district as set out in the petition and notice should be changed, but that such changes in the boundaries proposed shall not be so as to embrace any land not included in the notice given by the clerk of this court; that after such changes in the boundaries are made, the court further finds that such petition is signed and in writing consented to by the owners of more than a majority of all the acres of land within the district as so changed, and that said district and the boundaries thereof as changed are in all respects suitable and proper, and that said district ought and should properly be incorporated and established by the name, and with the boundaries so changed as aforesaid."

Then follows a description of the land included within the boundaries of the district as changed, leaving out a large part of the land included within the boundaries set out in the petition and notice. The land left out in the order is stated by the appellant to be two thousand acres; the respondents claim it is only one thousand two hundred and twenty acres. However, it is unquestioned that it is a large tract, some of it contiguous to the proposed road marked on the plat submitted to the court showing the boundaries of the district and the direction of a road in contemplation from Silex to Louisville.

The record does not show that a remonstrance was filed to the petition nor that the petition was amended so as to conform to the territory embodied in the district covered by the order. Recitals in the order indicate that no remonstrance was filed and the petition was not amended. It does not appear by the record thus introduced nor by other evidence that the parties, the relators, or any of them, were present at the time of the hearing of the matter before the county court, or that there was any hearing other than the considera-

tion of the petition and notice. The authority for the order as shown in its recitals is based upon the petition and the notice in the form in which they were filed and served, as above set forth. The circuit court decided the district was properly incorporated and dismissed the information. From that judgment relators appeal.

I. It is claimed by the relators in this case that the county court was without jurisdiction to incorporate the district with the boundaries changed from those

Changing Boundary of Proposed Road District.

stated in the petition and notice, so as to exclude a large part of the land in contemplation by the petitioners for the formation of the district in the first place.

The statute under which the proceeding was had, Section 10612, Laws 1913, page 678, requires that a petition signed by the owners of a majority of the acres of land within the district proposed to be organized, and "setting forth the proposed name of the *district and giving the boundaries thereof,*" etc., shall be filed in the office of the clerk of the county court thirty days before the beginning of the regular term of said court, and requires the clerk to give notice, setting forth the manner in which the notice is to be given:

"Said notices shall contain the names of at least three signers of said petition and *set out the boundaries of the said proposed district,* and shall notify all owners of land in said proposed district who may desire to oppose the formation thereof to appear on the first day of such regular term of court and file their written remonstrance thereto."

The section then provides for the filing of remonstrances in writing, which are required to state the objections of remonstrators to the formation of the district; and, at the term of court following, "the court shall hear such petition and remonstrance, and shall make any change in the boundaries of such proposed district as the public good may require and make neces-

sary, and if after such changes are made it shall appear to the court that such petition is signed or. in writing consented to by the owners of a majority of all the acres of land within the district as so changed, the court shall make an order incorporating such public road district, and such order shall set out the boundaries. of such district as established.''

The section then directs:

''If no remonstrance shall have been filed, or all remonstrances filed are overruled by the court, the court shall determine whether such petition has been signed by the owners of a majority of the acres of land in the district, and if so, shall make an order incorporating the district with the boundaries given in the petition, or with such boundaries as may be set forth in an amended petition signed by the owners of a majority of the acres of land affected thereby; and such amended petition may be filed at any time before the making of the order establishing a road district, but the boundaries proposed for the district shall not be so changed as to embrace any land not included in the notice given by the clerk unless the owner thereof shall in writing consent thereto, or shall appear. at the hearing,'' etc.

Then follow sections of the act which make provision for the appointment and election of commissioners after the incorporation of the district, their organization, the levy of taxes, the issuance of bonds, petitions for road improvements and the hearing of objections and exceptions to such improvement and the apportionment of the tax against the property of the district, in accordance with its value, and the benefits to be received from the construction of the road according to its distance from the road so constructed, the issuance of tax bills, making of contracts for the construction of the road, etc.

This statute shows that two contingencies are provided for on the hearing of the petition:

First, where remonstrances are filed the court hears the petition and the remonstrances and if the public good requires it, makes a change in the boundaries of

the proposed district and incorporates it with such change. Evidently the change to be made in such case would be only after all the parties for or against the change might have opportunity to be heard before the court. All parties are notified of the original boundaries of the district as shown in the original petition and notice. It will be noticed that the only action to be taken by the county court under this section, is the *formation of the district,* and the only question which would come before the court in the first contingency, if the district should be incorporated, would be whether the boundaries should be as set out in the original petition or changed on consideration of the remonstrances. A remonstrance could not, in any event, cover any other objection than one of these two: Either that the public good did not require the formation of the district at all, or that its formation should include land bounded differently from that stated in the petition. The Legislature doubtless had in mind that when a remonstrance is filed, suggesting a change in the boundaries, every petitioner and everybody who had notice of the proposed formation of the district is constructively notified of what is on file and what is to be heard and determined by the court. We are not called upon to determine in this case whether the county court would have authority to organize a district in such case with boundaries changed from those set out in the petition, and also different from any contemplated in any remonstrance; that is, a change of which there is no notice on file.

The second contingency, the one with which we have to deal, is where no remonstrance has been filed or all remonstrances have been overruled by the court; that is, where remonstrances are left entirely out of consideration, with nothing on file for the court to consider in the formation of the district except the petition; then, the statute says:

"The court shall determine whether such petition has been signed by the owners of a majority of the acres of land in the district, and if so, shall make an order incorporating the district with the *boundaries given in the*

*petition* or with such boundaries as may be set forth *in an amended petition* signed by owners of a majority of the acres of land affected thereby; and such amended petition may be filed at any time *before* the making of the order establishing a road district.''

It is possible that the Legislature had in mind here that the filing of an amended petition setting forth different boundaries from those contained in the original petition would be a change of which all parties interested must take notice.

But the court is not authorized to make ''any change'' in such case which does not conform to the petition as amended. The district in this case was incorporated with boundaries entirely different from those set out in the petition, and no amended petition was filed.

Those who were notified of the proceeding in the first instance were informed that a certain number of acres, eleven thousand three hundred and sixty, would bear the burden and expense of such roads as might be built. To this no one objected. As the road district was incorporated a large part of this land, in quantity ten or fifteen per cent., the value not being given, was left out, placing an additional burden, not contemplated in the original petition and notice, upon the land remaining in the district. And, so far as the record shows, the change was made when relators had no opportunity to be heard in opposition to it.

It has been held frequently that a county court when acting in a judicial capacity acquires jurisdiction only by strict compliance with a statute which gives it authority to act; and it is a rule that all the facts necessary to confer jurisdiction and make valid an act of the county court must affirmatively appear upon the face of its record.

II. It is argued by respondents that the county court had authority to pass upon the facts showing whether or not it had jurisdiction and having found the facts in favor of its jurisdiction the finding is conclusive. This finding of the court was a mere conclusion from the finding that a proper

Jurisdiction.

petition was filed and proper notice served. And it may be conceded that the county court did have jurisdiction of the subject-matter and of the parties interested, authorizing it to incorporate a road district. But, under the authorities, it must not only have acquired jurisdiction, but must act within the limits of the jurisdiction so acquired. If, having jurisdiction of the subject-matter, it proceeded to render a judgment in excess of its jurisdiction, then the judgment is a nullity. It could incorporate a road district defined in the petition and in the notices served, but the road district which it actually ordered incorporated was not that one at all, but another one entirely. It did not conform to the original petition nor to any amended petition, and was in total disregard of the statute under which the court purported to act. If ninety per cent of the land had been left out and the entire burden of constructing the contemplated roads in the district had been cast upon ten per cent of the land, provided it was an amount sufficient to warrant the incorporation of the district, the result would be the same in principle as leaving out ten per cent of the land.

Respondents cite several cases in support of their position. All these are cases where the facts found by the court to give it jurisdiction are either specifically found in every respect or else there is a finding in general terms from which the specific facts necessary to confer jurisdiction are presumed to have been found, and in all the cases cited there were collateral attacks upon the judgments. A *quo warranto* proceeding is a direct attack upon, and in fact the appropriate direct proceeding by which to attack the validity of the county court's order incorporating the district. [State ex rel. v. Wilson, 216 Mo. l. c. 275; State ex inf. v. Fleming, 158 Mo. l. c. 561; State ex rel. v. Mining Co., 262 Mo. l. c. 503.]

In this case the record shows exactly what the county court found in order to confer jurisdiction; that is, that the petition was in due form and the notice regularly served. There was no finding of any facts which would confer jurisdiction to make the change in the boundaries of the district; that is, no finding that there was an

273 Mo.—14

amended petition or a hearing on remonstrances. The county court justified its change of the boundaries, not upon the finding of jurisdictional facts, but upon "evidence adduced to show that the public good required it." Although it had jurisdiction of the cause in the first instance, in exceeding the statutory authority, in going beyond the authority given it by the petition and notice, it exceeded its jurisdiction and rendered the entire proceeding void. [State ex inf. Rosenberger v. Bellflower, 129 Mo. App. 138; Seafield v. Bohne, 169 Mo. 537, l. c. 547; State ex rel. v. Campbell, 120 Mo. l. c. 402; State ex rel. White v. Small, 131 Mo. App. l. c. 476; State ex rel. Campbell v. Heege, 37 Mo. App. l. c. 348.]

III. Respondents argue at great length that the authority of the county court to make any change "the public good may require," mentioned in connection with remonstrances, implies the right to depart from the description in the petition without amendment. In support of this position they contend that the authority to establish a district is a legislative function, delegated to the county court, and therefore a change of boundaries from those set out in the petition could be made without an opportunity for the persons affected to be heard. Doubtless the legislative authority could establish and incorporate a district for purposes of special improvement and taxation, and determine, without notice or hearing, what land would be benefited and appropriately included in it. That would be a "legislative determination" of that result.

Legislative and Judicial Functions.

The rule that a purely legislative function, under the constitutional division of powers, cannot be delegated by the lawmaking branch of government, is still adhered to pretty consistently in this State. [See Merchants Exchange v. Knott, 212 Mo. 616, l. c. 641-2, and cases cited there.] It is outside the scope of our inquiry to attempt a survey of the undefined territory occupied by the supposed exceptions to this rule. But a

few general observations are pertinent because of the argument advanced. Cases involving the powers of cities are not in point here. Certain limited legislative powers possessed by municipal corporations of a certain class may be referred to the Constitution, art. 9, sec. 17, whether the authority given there be regarded as a direct constitutional grant to cities, or special authority granted the Legislature in providing for the government of cities. It would hardly be appropriate to say that the Legislature, in enacting forms of government for cities, as authorized by the Constitution, delegates its own peculiar functions to such cities. [Pash v. St. Joseph, 257 Mo. 332, l. c. 341; Kansas City v. Mastin, 169 Mo. 80, l. c. 91; Kansas City v. Ward, 134 Mo. 172, l. c. 186.]

The Legislature may confer upon certain officers, boards, commissions and courts, power to carry out in detail the legislative will, to promulgate rules and regulations, to ascertain facts upon which the operation of a statute would depend, or carry through certain prescribed procedure by which to put in force certain statutes in limited districts. [6 R. C. L. 177; 12 C. J. 809.] Such powers sometimes are spoken of by the courts as powers *delegated* by the legislative authority, when the word is used to designate the purpose to be accomplished rather than the function exercised in accomplishing it. [Merchants Exchange v. Knott, 212 Mo. 616, l. c. 633, 636; State v. Thompson, 160 Mo. 333, l. c. 343-4.] Usually they are designated as administrative or judicial functions "conferred upon" such bodies or powers with which they are "intrusted." [McGhee v. Walsh, 249 Mo. l. c. 283; State v. Vickens, 186 Mo. 103, l. c. 106; State ex rel. Maggard v. Pond, 93 Mo. 606, l. c. 621; State ex rel. v. Fort, 210 Mo. l. c. 557; State ex rel. v. Glaves, 268 Mo. l. c. 104-5; Meier v. St. Louis, 180 Mo. l. c. 409.]

The law relating to the incorporation of drainage districts in some of its general features is like the statute under consideration here, and drainage dis-

trict cases are cited by respondents in support of their position. But in those very cases it is held the organization of such districts involves the "right of the Legislature to clothe the constituted courts, with jurisdiction to inquire of and determine *such judicial questions* as may arise in the course of the proceeding." [Elsberry Drainage District v. Harris, 267 Mo. 1. c. 150.]

This court said in In re Birmingham Drainage District v. Railroad, 266 Mo. 60: "To accomplish the single purpose of putting in action a drainage district required not only the enactment of a statute fixing the extent. purpose and general powers of the district, which is a purely *legislative function,* but the appropriation of private property for such purpose and determining the damage therefor by jury trial, *which are distinctly judicial functions.* Between these lies 'no man's land,' a region of action unclassified by the terms of the Constitution."

This "legislative function" is exercised by the Legislature when it enacts the law.

The "appropriate agencies" spoken of further on in this opinion, by which such public corporations are "put into effect," are invested with administrative and judicial functions.

The sections of the statute under consideration were held constitutional by this court, because the assessments contemplated were "not public taxes within the meaning of the Constitution authorizing the levy and collection of taxes for public or governmental purposes, but are special taxes assessed against the property for the payment for the improvements . . . which in legal contemplation adds to the value of the property as much or more than the amount of taxes imposed." [Embree v. Road District, 257 Mo. 1. c. 610.]

While authority merely to lay off special taxing districts may be granted by the Legislature to certain boards, or councils, or other administrative bodies, yet

before the land included can be burdened with a special assessment for benefits, a notice and opportunity to be heard must be accorded the landowners, in order that the Constitution's "due process of law" may be satisfied. [McGhee v. Walsh, 249 Mo. l. c. 289-94; French v. Barber Asphalt Paving Co., 181 U. S. 324, l. c. 341; Norwood v. Baker, 172 U. S. 269.] "Unless the Legislature decide the question of benefits itself, the landowner has the right to be heard upon that question before his property can be taken" (included in the district). [Fallbrook Irrigation District v. Bradley, 164 U. S. 112, l. c. 175.]

From the earliest time it has been held that the act of the county court incorporating a municipal corporation is a judicial act. [Kayser v. Trustees of Bremen, 16 Mo. 88; State ex rel. v. Mining Co 2662 Mo. l. c. 502; State ex inf. v. Fleming, 158 Mo. l. c. 563.] In organizing road districts the county court doubtless exercises certain ministerial functions, but necessarily "*judicial questions arise in the course of the proceeding*" when the county court passes upon the facts which would give it jurisdiction, when it determines whether or not the petition is properly signed and the notice is duly served. It is a judicial function which the county court must exercise when it determines whether or not the lands included in a district will be benefited by the contemplated improvements. [Fallbrook Irrigation District v. Bradley, 164 U. S. l. c. 169.]

Respondents contend further that the county court may *incorporate* the district without making any such inquiry as to benefits. They quote the language of Section 10611 that the court may organize a district "of any dimensions that may be deemed advisible," and the language of Section 10612, relating to making such changes as the public good may require, and argue that the statutes under consideration provide for a determination of that matter later, when the question of specific improvement comes up, and therefore it need not be considered at the formation of the district.

The Embree case (240 U. S. 242) got into the United States Supreme Court on a writ of error because on that very point the constitutionality of the law, under the Fourteenth Amendment to the Federal Constitution, was involved. It was there held that the act was constitutional, because it afforded the landholders an "opportunity to be heard upon the question whether their lands would be thus benefited." This hearing was to be had when the formation of the district was under consideration, for the court (p. 246) calls attention to the notice which the clerk is required to give in order that the landowners might "appear, either collectively or separately, and *oppose its* formation." Then the court quotes a part of the order in that case showing a hearing and the formation of the district "with boundaries as stated in said petition" and says, page 247:

"As the district was *not established by the Legislature* but by an exercise of delegated authority, there *was no legislative decision* that its location, boundaries and needs were such *that the lands therein would be benefited by its creation and what it was intended to accomplish, and, this being so, it was essential to due* process of law *that the landowners be accorded an opportunity to be heard upon the question whether their land would* be thus benefited."

The opinion points out (p. 249) that this court (Embree v. Road District, 257 Mo. 593) did not definitely decide just *when* the inquiry should be had. The U. S. Court then was considering only the formation of the district and the prerequisite notice; that was the matter before it. That no doubt might arise as to *when* the consideration of benefits must be had, the court said (p. 248):

"That a hearing of some kind was contemplated is obvious, and is conceded. But it is insisted that it was *not* to be directed to the question whether the lands included *would be benefited by the creation of the district and what it was intended to accomplish.* If that were so, there would be little purpose in the hearing and no *real necessity* for it."

And on page 249:

"We conclude therefore that the statute did provide for according the landowners an opportunity to be heard, *when the district was created,* upon the question whether their lands would be benefited, and also that the order establishing the district shows that the statute was complied with in that regard."

Language could not plainer state that in organizing the district the court must determine, after notice and opportunity to landowners to be heard, whether or not lands located within its proposed boundaries would be benefited. [See also French v. Barber Asphalt Paving Co., 181 U. S. l. c. 341.] Of course, it is not meant by this that the county court would definitely assess the benefits which would accrue to the several tracts of land for a road which would be built,—that was left for consideration in subsequent proceedings. But it must be decided by the county court that *all* the land in the district would be benefited by the formation of a district in an amount approximating the probable burdens. Of. course,the mere laying out of the district, without more, would not benefit anybody's lands. It is not likely that the county court would ever find the "public good" required such purposeless action. In the very nature of a case when a district is formed it is formed for the purpose of constructing some contemplated road or roads and in such case the county court probably has information as to the location and extent of the road or roads in contemplation when the petition is presented, otherwise how could it determine that the public good required the formation of the district?

The road district law shows the legislative intention to have this inquiry before the district shall be organized. It provides for notice and hearing at that time. There would be "no necessity" for such notice, as suggested in the Embree opinion, and the hearing would be an inconsequential formality, if the determination of that matter were not had at that time.

We conclude that the county court in such proceeding acts judicially in determining whether the land in

question in a proposed district is to be benefited, which involves an inquiry as to the propriety of any change of boundaries from those described in the original petition; that this determination must be had before the district is incorporated, and · the record must affirmatively show jurisdiction according to the statute to do whatever is done. In this case, in the formation of a district different from the one of which the landowners had notice, the record shows that the statute was not complied with and shows no opportunity for an actual hearing was accorded to the landowners upon such proposed change. There can be no presumption of such hearing, as there might be if the description in the order coincided with that in the petition.

IV. This interpretation of Section 10612 does not render it inconsistent with the terms of Section 10611, as respondents vigorously assert. The general power granted the county court in Section 10611 to organize districts "of any dimensions that may be deemed necessary or advisable" within certain limits, must be interpreted in connection with the following Section 10612, which prescribes the method whereby those general powers may be carried into effect, and the procedure by which the court may acquire and exercise jurisdiction to make orders affecting specific property.

**Statutory Conflict.**

V. It is claimed also that the county court, having jurisdiction, merely acted irregularly in excluding part of the land described in the petition; that the error was merely one of granting relief not warranted by law, and would not involve the jurisdiction. The case is not like one where a court renders judgment for more than the pleadings would warrant; for instance, not like the judgment of the circuit court enforcing a specific lien against property not included in the petition as well as that mentioned in the petition. The judgment would be a null-

**Irregular and Void Judgment.**

ity as to property not described in the petition, but
would be effective as to that described. In that case
nobody is hurt. But here the judgment and order can-
not be separated in that manner, because all the prop-
erty in the district is affected by the variance in the
order from the petition. The order could not be valid
in part if void in part.

In this connection it is argued that the order would
not be a nullity, but the district formed would be the
one described in the petition; that the law would
presume that the order conformed to the petition, and
the proper proceeding was to compel the court by a
mandamus to enter the judgment in conformity to that
presumption. That position ignores the actual finding
of the court that a change was necessary and was
made, and ignores the judicial character of the act
performed. It assumes that the function of the county
court in the matter is merely ministerial. The circuit
court could not by mandamus compel the county court
to exercise its discretion in any particular way. It
was confined to the record made, and the record shows
on its face that the county court did not make the
order which respondents claim must be presumed to
have been made. It would be just as appropriate to
indulge the presumption contended for if the record
were entirely silent or if it showed the petition dis-
missed.

The judgment is reversed and the cause remanded
with directions to the circuit court to enter judg-
ment declaring the action of the county court incorporat-
ing the Silex & Louisville Road District of Lincoln
County entirely void and ousting the respondents as
commissioners of such road district.

*Roy, C.,* concurs.

PER CURIAM.—The foregoing modified opinion
by White, C., is adopted as the opinion of the court.
All the judges concur.